Northern District of California    Civil Action No.

Peter Alioto's Hof Brau, et al. v.   C–79–0548–CFP
Loomis Armored Car Services, Inc.,
et al.

## In re PETROLEUM PRODUCTS ANTITRUST LITIGATION.

*Caldo Oil Co., Inc., et al. v. Gulf Oil Co.,*
N.D. California, C.A. No.
C78–1857–SAW

### No. 150.

Judicial Panel on Multidistrict Litigation.

Sept. 7, 1979.

Before MURRAY I. GURFEIN, Chairman, and EDWIN A. ROBSON, STANLEY A. WEIGEL *, ANDREW A. CAFFREY *, ROY W. HARPER and CHARLES R. WEINER, Judges of the Panel.

OPINION AND ORDER

PER CURIAM.

The Panel, pursuant to 28 U.S.C. § 1407, previously has centralized several actions in this litigation in the Central District of California and, with the consent of that court, assigned them to the Honorable William P. Gray. *In re Petroleum Products Antitrust Litigation,* 419 F.Supp. 712 (Jud. Pan.Mult.Lit.1976).[1] The actions presently before Judge Gray in the Central District of California include actions brought by the States of Connecticut, Florida, California, Washington, Oregon, Arizona and Kansas, and by the City of Long Beach, California. The complaints in the state actions charge a variety of oil company defendants with jointly and severally violating various federal antitrust laws, and basically challenge the structure and business practices of the petroleum industry on national, state and local levels. The complaints in the state actions allege that defendants conspired, in violation of Sections 1 and 2 of the Sherman Act, to restrain trade in the production, transportation, and refining of crude oil, and the distribution and marketing of refined petroleum products. The complaints further charge that defendants' illegal activities were made possible through defendants' vertical integration and that the conspiracy was effectuated by numerous types of horizontal agreements among defendants. In addition, the state complaints allege that defendants conspired to create an artificial shortage of crude oil and refined petroleum products within the United States.

* Judges Weigel and Caffrey took no part in the decision of this matter.

1. In two earlier decisions, the Panel had centralized some of the actions in this litigation in the District of Connecticut. *In re Petroleum Products Antitrust Litigation,* 393 F.Supp. 1091

(Jud.Pan.Mult.Lit.1975); 407 F.Supp. 249 (J.P. M.L.1976). The Panel subsequently decided to retransfer this litigation to the Central District of California. *In re Petroleum Products Antitrust Litigation, supra,* 419 F.Supp. 712.

The states have initiated their complaints as consumers of petroleum products and also purport to represent classes of (1) public entity purchasers of petroleum products and (2) private consumers. The states have also sued as *parens patriae* on behalf of their private consumer citizens. No class determinations have yet been made in the transferee district.

In addition to the allegations of the complaint brought by the State of California outlined above, California has also sued on behalf of a purported class of public entity crude oil sellers in California. California's complaint, together with the complaint in the action filed by the City of Long Beach,[2] alleges that defendants conspired to depress the price of crude oil in California, thereby depriving the plaintiffs of royalty income.

The record before us amply reveals that Judge Gray has actively controlled the course of discovery and other pretrial proceedings in the state actions. On April 27, 1979, after extensive briefing and oral argument aimed at focussing the issues and delineating the scope of discovery, Judge Gray entered an order permitting discovery in the state actions with respect to the following subject areas: (1) the pricing of gasoline during the period January 1, 1971 through December 31, 1972; (2) the allegedly contrived scarcities of gasoline, diesel fuel, home heating oil, and residual fuel oil during the period January 1, 1970 through December 31, 1973; and (3) policies and practices concerning the customers of others in bidding for contracts to supply petroleum products to public agencies during the period January 1, 1969 to December 31, 1973.

Judge Gray has also actively presided over pretrial proceedings in Long Beach's action. The record before us reveals that this action has been handled by Judge Gray as a "separate entity." While discovery to date in the Long Beach action has been more limited than that in the state actions, Judge Gray has issued several orders concerning motions for summary judgment in the Long Beach action.

Plaintiffs in the action now before us (*Caldo*) are four non-branded independent distributors of motor gasoline. In addition, each plaintiff is a former wholesale distributor of Gulf branded motor gasoline. After Gulf sold its northern California refinery and ceased marketing and supply efforts in that area on March 1, 1978, each of the plaintiffs in *Caldo* allegedly refused to pay its account balance to Gulf. In early May, 1978, Gulf commenced a separate action to collect on the accounts against each of the *Caldo* plaintiffs in California state court. The *Caldo* plaintiffs filed the action which is now before the Panel against Gulf on August 16, 1978, in the Northern District of California, and also answered in the state court actions. The parties subsequently agreed to dismiss the four state court actions, and Gulf answered and counterclaimed for collection of the accounts in *Caldo,* thereby joining all issues in the Northern District of California.

In the *Caldo* complaint, plaintiffs allege that Gulf, the sole defendant, and nine named co-conspirators (seven of whom are major oil companies and are defendants in many of the actions in the transferee district) (1) conspired, in violation of Section 1 of the Sherman Act, to eliminate competition among themselves and to suppress or eliminate the competition of others in the distribution and retail sale of motor gasoline in the San Francisco Bay metropolitan area and the rest of California; (2) in violation of Section 2 of the Sherman Act attempted to and did in fact monopolize the distribution and retail sale of motor gasoline in California and, more particularly, within the San Francisco Bay metropolitan area. Plaintiffs allege that these activities commenced at least as early as 1964 and continued through at least August, 1978. In addition, the complaint alleges that, between 1974 and 1976, Gulf and two named co-conspirators, which are not involved in the actions pending in the transferee district, engaged in discriminatory pricing

---

**2.** The allegations of the complaint in the Long Beach action are more fully discussed in *In re*

*Petroleum Products Antitrust Litigation, id.* at 715–16.

practices concerning the distribution and retail sale of motor gasoline in California, and especially in the San Francisco Bay metropolitan area, in violation of Section 2(a) of the Robinson-Patman Act. Finally, plaintiffs charge that Gulf violated various federal energy laws and regulations from June, 1973, until at least August, 1978.

No discovery has yet been conducted in *Caldo.*

Because *Caldo* appeared to share questions of fact with the actions in the transferee district, the Panel issued an order conditionally transferring *Caldo* to the Central District of California. *See* Rule 9, R.P. J.P.M.L., 78 F.R.D. 561, 567–68 (1978). Motions to vacate the Panel's conditional transfer order have been filed by Gulf and by the seven major oil companies that are named as co-conspirators in *Caldo.* Eight other oil companies, which are not involved in *Caldo* but which are defendants in the transferee district, have joined in these two motions. Plaintiffs in *Caldo* favor transfer. Plaintiffs in the state actions have appeared before us but have taken no position concerning transfer of *Caldo.*

While we recognize that *Caldo* and the actions in the transferee district share some questions of fact, we are convinced that transfer of *Caldo* to the Central District of California would neither serve the convenience of the parties and witnesses nor promote the just and efficient conduct of the litigation. Accordingly, we grant the motions to vacate the conditional transfer order.

Plaintiffs in *Caldo* contend that *Caldo* and the actions in the transferee district share questions of fact concerning, *inter alia,* whether Gulf and other MDL–150 defendants (1) controlled gasoline refining capacity; (2) controlled the gasoline retail market; (3) conspired to restrain trade in the distribution and marketing of gasoline; (4) combined to monopolize distribution and marketing of gasoline; (5) limited the amount of gasoline available, both in the market generally and specifically to independent marketers; (6) raised, fixed and maintained prices for gasoline; and (7)

combined to divide the United States into controlled marketing areas and to allocate gasoline customers among themselves. Plaintiffs acknowledge that they will seek unique discovery concerning certain issues, such as those concerning price discrimination, that are not involved in the actions in MDL–150, and that they may seek some discovery in *Caldo* which is broader, at least in terms of relevant time periods, than that presently contemplated by Judge Gray in the transferee district. Nevertheless, plaintiffs assert that they clearly will conduct discovery in *Caldo* along the three lines of discovery that Judge Gray has recently authorized in MDL–150. Transfer is thus necessary, plaintiffs urge, in order to avoid duplicative discovery, prevent inconsistent pretrial rulings, and conserve the time and efforts of the parties and witnesses.

In the context of this litigation, we find these arguments unpersuasive. In one of our earlier opinions in this litigation, we observed that the complaints in the state actions then before us, as originally filed, charged "that the defendants violated the federal antitrust laws by conspiring to fix prices and eliminate competition from the wellhead to the ultimate consumer, the gamut of the vertically-integrated international petroleum industry." *In re Petroleum Products Antitrust Litigation,* 407 F.Supp. 249, 251 (Jud.Pan.Mult.Lit.1976). In our most recent opinion concerning MDL–150, in which we took the unprecedented step of retransferring this litigation from the District of Connecticut to the Central District of California, we stated that the "fact that the structure and business practices of the oil industry are extremely complex is no secret to anyone and underlies our thoughts [concerning retransfer]. Surely, much judicial attention will be required to process this litigation." *In re Petroleum Products Antitrust Litigation, supra,* 419 F.Supp. at 719. At the present juncture of pretrial proceedings in the transferee district, the record before us reveals that our statements concerning the complexity of the issues raised by the actions in MDL–150, as well as our prediction

concerning the amount of judicial time and effort needed to organize and control pretrial proceedings in this litigation, have clearly been borne out. As we have already noted, in an attempt to pare down and more precisely focus the exceedingly broad and complex allegations of the complaints in the states' actions, Judge Gray recently has entered an order governing the scope of discovery in those actions. Some of the defendants before us represent that this studied order embodied a decision that was reached by Judge Gray only after substantial oral argument and "months of briefing encompassing in excess of 1,000 pages and a multitude of charts and exhibits . . . ."

Plaintiffs in *Caldo* have candidly acknowledged, in their papers before the Panel, that transfer of *Caldo* would have a significant impact upon the pretrial program designed by Judge Gray:

As much as transfer and coordination may benefit the *Caldo* case plaintiffs, the scope of discovery permitted thus far in the state actions and the possible requirement of a third track of discovery are causes for concern. While the merits discovery emphasis in the state actions is upon marketing and distribution of refined products, its timeframe and subject or area limitations are too limited for the *Caldo* case plaintiffs. To accommodate the timeframe and areas necessary for just and efficient prosecution of the *Caldo* case, either the existing discovery areas must be expanded or a third track of discovery and pretrial will have to be managed by Judge Gray.

Under these circumstances, we are convinced that inclusion of *Caldo* in MDL–150 at the present time would disrupt and substantially delay the orderly progress of pretrial proceedings in the transferee district, while bestowing upon the parties in *Caldo* concomitant benefits that could more easily be garnered by suitable alternatives to Section 1407 transfer.

Examples of suitable alternatives to best accomplish the goals of Section 1407 are as follows: the parties could agree, or any party may request from the district court

supervising *Caldo,* that discovery already completed in the transferee district and relevant to *Caldo* be made applicable to *Caldo*; the parties could seek to agree upon a stipulation that any further discovery relevant to any of the actions in MDL–150 and to *Caldo* may be used in all those actions; notices for a particular deposition could be filed in all relevant actions, thereby making the deposition applicable in each action; and any party could seek orders from the courts before whom the actions in MDL–150 and *Caldo* are pending to direct the parties to coordinate their pretrial efforts whenever it is appropriate to do so. *See In re Women's Clothing Antitrust Litigation,* 455 F.Supp. 1388, 1391 (Jud.Pan.Mult.Lit. 1978); *In re Western Electric Co., Inc. Semiconductor Patent Litigation,* 436 F.Supp. 404, 406 (Jud.Pan.Mult.Lit.1977). *See also In re Upjohn Company Antibiotic Cleocin Products Liability Litigation,* 81 F.R.D. 482 (E.D.Mich.1979); *Manual for Complex Litigation,* Parts I and II, §§ 3.11 (rev. ed. 1977). Also, consultation and cooperation among the two concerned district courts, if viewed appropriate by those courts, coupled with the cooperation of the parties, would minimize the possibility of conflicting pretrial rulings. *See In re Women's Clothing Antitrust Litigation, supra,* 455 F.Supp. at 1391.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the order conditionally transferring *Caldo Oil Co., Inc., et al. v. Gulf Oil Co.,* N.D.California, C.A.No. C78–1857–SAW, to the Central District of California be, and the same hereby is, VACATED.